IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SARAH HERESNIAK,

    Plaintiff,

v.

REGENCY MANAGEMENT SERVICES, LLC,

    Defendant.

CASE NO.:  1:21cv502

JURY TRIAL DEMANDED

## COMPLAINT

For her Complaint, Sarah Heresniak, by counsel, states as follows against Regency Management Services, LLC ("Regency Management"):

### NATURE OF THE CASE

1. This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. ("Title VII"). Defendant Regency Management discriminated against the Plaintiff because of her gender by subjecting her to unlawful sexual harassment, retaliating against her and constructively discharging her.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. §2000e(5) (jurisdiction over cases filed under Title VII); 28 U.S.C. §1331 (federal question jurisdiction); and 28 U.S.C. §1337 (jurisdiction arising from Congressional regulation of commerce).

3. The employment practices hereafter alleged to be unlawful were committed within the Eastern District of Virginia, more specifically, in the City of Falls Church. Accordingly, venue in this judicial district is proper.

## PARTIES

4. Sarah Heresniak ("Heresniak") is a resident and citizen of the Commonwealth of Virginia and the United States. She maintains her principal residence at 225 Century Place, Apt. 2104, Alexandria, Virginia.

5. Regency Management is a Maryland corporation and conducts business in Maryland and Virginia. It maintains its principal place of business at 7900 Cedarville Road, Brandywine, Maryland.

6. At all times relevant to this action, Plaintiff was an "employee" of Regency Management as that term is defined under Title VII.

## ADMINISTRATIVE PREREQUISITES

7. Plaintiff has met all administrative prerequisites to filing this action, including the filing of a timely Charge of Discrimination with the EEOC and bringing this action within 90 days of the issuance of the Notice of Right to Sue that she received from the EEOC.

## FACTS

8. Regency Management hired Heresniak in October of 2018. She was 17 years of age at the time. At the time of her termination of employment she was employed by Regency Management in the position of sales associate and had aspirations to work in a management position with the company.

9. Heresniak was subjected to unlawful sexual harassment by Raid Ghousheh ("Ghousheh"), a General Manager and direct supervisor of Heresniak. Ghousheh is significantly older than Heresniak.

10. At all times relevant to this matter, Heresniak executed her duties with Regency Management in a manner that met or exceeded the company's expectations. She always

performed her duties with Regency Management well.  As of the time of her termination in June 2019, she earned in excess of $45,000 per year.

11.     Any reasonable assessment of Plaintiff's abilities would reveal a capable and smart young woman who made a significant effort to perform her job in a professional and courteous manner.  Throughout much of Heresniak's time working for Regency Management, her work environment was laced with inappropriate sexual comments and, at times, unwanted and offensive touching and sexual battery by Ghousheh.

12.     Because of Heresniak's young age, Ghousheh told her that he was doing her a favor by letting her stay at her job and that he was so respected in the company that he could allow things like this.

13.     Ghousheh would on occasion call Heresniak "bad" or "nasty" and he meant this as sexual innuendo.

14.     Ghousheh insinuated that Heresniak was flirting with customers and using her body to close deals.

15.     Ghousheh would often hug Heresniak and put his hand on her back and shoulders.

16.     Ghousheh almost daily used foul language, including the f-word.  The work environment created by Ghousheh was infused with talk of sex and sexual innuendo.

17.     Ghousheh told a story about a girl he used to "hook up" with and how they went out and he was now refusing her.

18.     Ghousheh also spoke of a corporate employee who slept with him to get a promotion.

19.     Ghousheh always talked about how he was a licensed doctor in Psychology and that he was "like a black box" and that Heresniak can tell him anything she wants.

20.     The Sales Manager position at Regency Management remained unoccupied for several months and Ghousheh asked Heresniak if she was interested in filling this position. Wanting to work her way up in management, Heresniak said yes, and began training for this position. Heresniak later learned that she would not get this promotion when Ghousheh admitted to her that, in order to be promoted, she would have to have sex with him.

21.     On April 30, 2019, Ghousheh asked Heresniak if she was interested in filling the vacant Sales Manager position at the company and she said yes. Ghousheh asked Heresniak to stay after work for a few minutes. During this time, Heresniak sat with Ghousheh in his office and he showed her how to calculate margins and send e-mails at the end of the day for closing. Ghousheh also talked about the "mental requirements" for the job. Ghousheh told Heresniak not tell anyone about the job offer and specifically told Heresniak to not tell her boyfriend or her family. Ghousheh told Heresniak that the job offer was "under the table" and that it could be revoked at any time.

22.     On May 1, 2019, Ghousheh asked Heresniak to stay after work again so she could continue training to be the Sales Manager. Ghousheh told Heresniak how she has to change the way she thinks in order to become "the best Sales Manager this company has ever seen". Ghousheh said "I want to blow people away when I announce you as Sales Manager". Ghousheh said he wanted to "brain wash" Heresniak. Ghousheh also spoke affirmatively and enthusiastically about an increase in salary for her. During this time, another employee came into the office looking for her cell phone. After the employee left, Ghousheh told Heresniak that he had offered the employee the same position a few months prior, but had revoked the offer because she had told other employees about the offer. Ghousheh also called the employee "nosy". The employee came back in the store a second time saying she had forgotten her

cigarettes.  After the employee left, Ghousheh told Heresniak to go to the entrance of the breakroom with him and stand in the doorway.  All of the lights were off in the store except in the breakroom.  Ghousheh had his hands on Heresniak's shoulders rambling about how he needed to change the way she thinks.  Ghousheh then had Heresniak do a "breathing exercise" and told her to keep her eyes closed.  Ghousheh then asked Heresniak, "Are you relaxed now?" and "Doesn't this relax you?"  Ghousheh then asked Heresniak to kiss him and she said "No".  Ghousheh then said, "Good!  You passed the test!" Ghousheh then moved Heresniak to a table near his office in the showroom.  All of the lights in the store were still off in the store except for the breakroom.  Ghousheh then asked Heresniak to tell him what her boyfriend does in bed that she doesn't like.  This question was a highly sexual, very disturbing and inappropriate question.

        23.       On May 2, 2019, Ghousheh told Heresniak there would be no training that night and when she asked why, he said because he thinks people are getting suspicious.  Ghousheh told Heresniak to wait in the Safeway parking lot across from the store until he called her.  After she was in the parking lot for a short while, Ghousheh called Heresniak and gave her a lot of praise telling her how proud he was of her, how persistent she was and how much potential she has.  Ghousheh said to come back to the store and park in the front of the store (the employees park in the back).  When Heresniak walked into the unlocked front door, Ghousheh yelled for her to go upstairs.  Heresniak sat down at a table and Ghousheh sat next to her.  Ghousheh again talked about "brainwashing" Heresniak and that he needed to change the way she thinks.  Ghousheh said he needed to make this a contractual agreement to which she agreed.  Ghousheh then pulled out his cell phone and opened a voice memo app.  Before he started recording, Ghousheh said "pretend to hit on me".  When Heresniak would stop talking, Ghousheh would make motions and mouth words to Heresniak to keep talking.  When Ghousheh stopped recording, he said, "this is

in case you pull any of that sexual harassment crap". After the recording, Ghousheh started rambling about energy and how each body has its own energy. Ghousheh told Heresniak "you have to learn to use your own energy and learn to control it". Ghousheh said he was going to prove it to Heresniak. Ghousheh told Heresniak to close her eyes and he began to take a video from her chest up. Ghousheh took Heresniak's hand and began to rub the palm of her hand with his index and middle finger in an obvious sexual manner. All the while, Ghousheh was asking Heresniak, "Does this relax you? Doesn't it feel good?" Ghousheh then began to blow hot wet air into Heresniak's hand. Ghousheh then stopped the video and made her watch the whole video with him. At some point in the video, there was a blip and Ghousheh said, "Look! You can see the energy there; the energy passing from you into the camera".

24.     Ghousheh then asked Heresniak to kiss him. Heresniak said "No". Ghousheh kept saying, "Why not just kiss me?" Heresniak told him that she has a boyfriend with whom she was in a long term relationship. Ghousheh said "So what?" Ghousheh continued to talk and said "Do you not want to kiss me because you have a boyfriend or because you don't want to?" Ghousheh said, "Why not? I am a good looking guy. I am attractive." Ghousheh then told Heresniak to stand up and he took her by the shoulders and held her in place. Ghousheh then forcefully began kissing Heresniak and groping her. Ghousheh touched Heresniak's waist, side of her breast, her back and always had a hand on her shoulder. Ghousheh then took Heresniak's hand and forced her to grope his penis over his pants. Heresniak pulled her hand away, but Ghousheh grabbed her again and continued to forcefully make her grope him. Ghousheh said, "I'm a man. Of course, I'm going to get aroused." Ghousheh then got mad at Heresniak for not participating. He said, "You're in big trouble now." Ghousheh then grabbed her wrist and took her to the mattress gallery. Ghousheh grabbed Heresniak by her shoulders and held her in place

in front of a mattress.  Ghousheh continued to talk about "brainwashing" and at this moment, Heresniak feared she was going to get raped.  Ghousheh asked Heresniak what she was thinking and Heresniak told him she was scared.  Ghousheh told Heresniak to go home.  As Ghousheh walked Heresniak back to the front of the store, Ghousheh continued kissing and groping Heresniak.  Ghousheh then said, "If a corporate man ever asks you to dinner, you go.  If he kisses you, you kiss back.  If he touches you, you touch back.  It's just what you do."

      25.      Heresniak was in desperate need of this job and reluctantly returned to work.  On May 3, 2019, Ghousheh walked by Heresniak at work and said, "I want a full report on what happened last night."  Heresniak was leaving to go home early and Ghousheh stopped Heresniak in the parking lot.  Ghousheh said he would call Heresniak when it was time to come back to the store.  Ghousheh called Heresniak that night to tell her to come back to the store.  Ghousheh called Heresniak again to ask where she was.  Ghousheh told Heresniak to park in the front of the store.  When Heresniak arrived at the store, Ghousheh brought Heresniak to the back of his office standing in front of the first floor elevator.  Ghousheh told Heresniak to give him her report.  Heresniak told him that he thinks she is too uptight.  Ghousheh then said, "Correct!  That deserves a big kiss."  Ghousheh then began to forcefully kiss Heresniak and grope her.  Ghousheh put his tongue in Heresniak's mouth.  Ghousheh put his fingers in Heresniak's mouth.  Ghousheh told Heresniak that she had better not be recording him and he took her phone away from her and put it on a top shelf where she could not reach it.  Ghousheh began groping Heresniak again.  Ghousheh began to get mad because Heresniak was not participating and he said, "Just f---ing pretend."  He said, "I love kissing.  It is one of my favorite things to do."  Ghousheh then took Heresniak's hand and made her grope his penis.  Ghousheh then told Heresniak to unzip his pants.  Heresniak told him "No".  Ghousheh began to unzip his pants

himself. Ghousheh then got a phone call and spoke to a woman in Arabic. When he ended the call, Heresniak asked him, "Do I have to sleep with you to get this promotion?" Ghousheh said, "Yes, is that a problem?" Heresniak said, "Yes." As Heresniak was trying to leave the store, Ghousheh continued to kiss and grope her. At this point, Heresniak knew she would have no choice but to leave and began to seek new employment.

26. In committing the acts set forth herein, Regency Management deliberately discriminated against Heresniak because of her gender, and subjected her to a hostile work environment because she is a female. The actions complained of herein had the effect of altering, in a significantly adverse way, the terms and conditions of Heresniak's employment with Regency Management.

27. In addition to experiencing degrading and humiliating sexual harassment, Heresniak was constructively discharged by Regency Management and her career there was destroyed. The conditions became intolerable to Heresniak and she left her employment at Regency Management. She was terminated because of her refusal to accede to the working conditions imposed upon her. The creation of these conditions was intended by Regency Management to create a hostile and intolerable work environment.

28. As a direct, actual and proximate result of the conduct of the Defendant, Heresniak has suffered significant economic harm including loss of back pay, front pay and benefits. In addition, she has suffered non-economic damages including humiliation, anxiety, pain, loss of sleep, depression, mental anguish and loss of quality and enjoyment of life.

## COUNT I

### *Sexual Harassment in Violation of Title VII*

29. The allegations set forth in paragraphs 1 through 28, above, are incorporated into this Count by reference.

30. The conduct to which Heresniak was subjected was unwelcomed. The sexual harassment to which Heresniak was subjected was constant, pervasive, and created a hostile work environment. At all times relevant hereto, Heresniak resisted the improper conduct to the best of her ability.

31. The Defendant's conduct, and its failure to stop Ghousheh's actions, clearly demonstrated that submission to sexual harassment at Regency Management was both an explicit and implicit condition of employment. As a result of Heresniak's refusal to accede to the sexual harassment, and the treatment by Ghousheh in general, her career with Regency Management was destroyed and she suffered significant harm.

32. Regency Management's conduct in allowing the sexual harassment to occur was outrageous, intentional, willful and malicious and Heresniak has suffered significant harm as a result, including significant economic and non-economic damages for which Regency Management is liable. As a direct, actual and proximate result of the Defendant's conduct, Heresniak has sustained economic damages including loss of back pay, loss of front pay and benefits. In addition, she has suffered significant non-economic damages for which Regency Management is liable including humiliation, anxiety, pain, mental anguish, loss of sleep, depression and loss of quality and enjoyment of life.

## COUNT II

*Constructive Discharge in Violation of Title VII*

33. The allegations set forth in paragraphs 1 through 28, above, are incorporated into this Count by reference.

34. Heresniak was subjected to assault and battery throughout her employment with Regency Management. In addition, she was subjected to intolerable and outrageous acts of sexual harassment. Heresniak realized that she must, as a practical matter, accept the working conditions to which she was subjected or terminate her employment. Heresniak found the conditions of her employment to be intolerable, and any reasonable woman in her position would have found it intolerable, and she had no choice but to resign.

35. The Defendant's discharge of Heresniak under these conditions was outrageous, intentional and malicious, and Heresniak has suffered significant harm as a result, including significant economic and non-economic damages, for which the Defendant is liable.

## COUNT III

*Assault and Battery*

36. The allegations set forth in paragraphs 1 through 28, above, are incorporated into this Count by reference.

37. The unlawful and unwelcomed touchings to which Heresniak was subjected constitute assault and battery under Virginia law.

38. Heresniak was subjected to several acts of assault and battery as described in paragraphs 15, 22, 23, 24, and 25, above.

39. The Defendant's assault and battery against Heresniak as set forth above was

outrageous, intentional, willful, and malicious, and Heresniak suffered significant harm as a result, including physical pain, emotional pain, mental anguish, anxiety, humiliation, loss of quality of life and other suffering for which the Defendant is liable.

**WHEREFORE**, Sarah Heresniak, for all Counts set forth herein, respectfully prays that this Court:

1) Order the Defendant to institute and carry out policies, practices and programs to provide equal employment opportunities to qualified individuals and which eradicate the effects of past and present unlawful employment practices;

2) Order the Defendant to make the Plaintiff whole with appropriate lost earnings, future lost earnings, and compensation for loss of future pensions and benefits in amounts to be proved at trial, with pre-judgment and post-judgment interest as applicable;

3) Order the Defendant to make the Plaintiff whole by providing her with all compensation to which she is entitled under Title VII, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981(a), for non-economic losses including, without limitation, emotional pain, suffering, inconvenience, mental anguish, humiliation, depression, loss of sleep and loss of quality and enjoyment of life in amounts to be proved at trial, with pre-judgment and post-judgment interest as applicable;

4) Order the Defendant to pay the Plaintiff punitive damages in amounts to be proved at trial and which are sufficient to prevent this conduct in the future, with pre-judgment and post-judgment interest as applicable;

5) Order the Defendant to pay Plaintiff's reasonable attorney's fees, expert fees and all costs incurred in bringing and prosecuting this action with pre-judgment and post-judgment interest as applicable; and

6)     All other and further relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues raised in this Complaint.

Respectfully submitted,

**SARAH HERESNIAK**

By: */s/ James H. Shoemaker, Jr.*
     Of Counsel

James H. Shoemaker, Jr., VSB No. 33148
Andrew J. Dean, VSB No. 88192
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4580
Facsimile: (757) 223-4518
Jshoemaker@pwhd.com
adean@pwhd.com

Cindra Dowd, VSB No. 33819
Payne Mitchell Ramsey Law Group
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
Telephone: (214) 252-1888
Facsimile: (214) 252- 1889
cindra@paynemitchell.com